## APPEAL OF BENJAMIN BOOTH & CO., INC.

Docket No. 3400. Submitted March 11, 1926. Decided June 28, 1926.

*Held,* on the evidence, that the taxpayer is not entitled to a deduction on account of obsolescence of machinery.

*William L. Wemple, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the Commissioner.

### Before PHILLIPS and TRAMMELL.

This appeal is from the determination of a deficiency in income and profits taxes for 1919, 1920 and 1921, in the aggregate amount of $12,083.22. The sole issue is the amount of the deduction on account of the exhaustion, wear and tear, including obsolescence, of certain machinery of the taxpayer. The taxpayer claims a rate of 10 per cent and the Commissioner has allowed a rate of 4 per cent.

#### FINDINGS OF FACT.

1. The taxpayer is a Pennsylvania corporation with its principal office at Philadelphia. It is engaged in the manufacture of card clothing. Card clothing is an article used by the textile industry in the production of woolen and cotton fabrics. It consists of sheets of heavy leather or canvas backs studded thickly with pointed steel wires of uniform length which are used in machines for combing out the tangled fibers of wool or cotton until those fibers lie parallel with each other in order to render them spinnable.

The machinery for manufacturing the article is automatic, highly complicated and requires precision of operation measured to the thousandth of an inch. This necessitates high efficiency of operation and requires constant inspection, maintenance and repair. The taxpayer had about 120 of these machines, costing approximately $1,000 each. The frame-work and certain parts of the machines had a long life, some, which have been operated over 25 years, being still in use. Many parts of the machinery had to be replaced or renewed every three to six months. They are subjected to great and constant vibration.

2. There were no American manufacturers of this type of machinery, owing to the fact that there were only five other concerns in the United States which manufactured card clothing. The machinery was made in Germany and England. On account of the war, the taxpayer has, since 1916, rebuilt and manufactured its own machinery. It built 25 or 30 of its machines and rebuilt a large portion of the others, with the exception of the frames. The original machines were purchased 25 years prior from English and German firms.

3. In 1916 the taxpayer had an appraisal made of its plant, which had been accepted by the Commissioner as the basis for determining the deduction for depreciation purposes and also for determining a paid-in surplus. At the time of the appraisal the machinery was practically 100 per cent efficient.

For 1918, 1919, 1920 and 1921, the taxpayer took depreciation (including obsolescence) at the rate of 10 per cent. The Commissioner allowed depreciation at the rate of 4 per cent.

4. The high rate of depreciation claimed by the taxpayer was intended to include an allowance for obsolescence and to build up a reserve for any change in machinery design that might require replacing the machines with others of more modern design prior to the exhaustion of their ordinary useful life, in order to meet competition.

5. The output of the card clothing machines depends upon the number of revolutions of certain parts per minute. There had been no radical or notable change in the machines designed from that used by the taxpayer for several years. During the taxable years in question the taxpayer had information of an indefinite character that experiments with a view to building machines with a greater number of revolutions per minute were being made in Germany. After the taxable years involved, this information became more definite and it was learned that the experiments were successful and that a machine had been perfected which would produce double the number of revolutions per minute.

The taxpayer occupied leased premises, under a two-year lease which expired in 1925, but under the terms of which, if notice was not given by either party thereto, it would continue under the same terms. The taxpayer considered the possibility of building an entirely new plant with modern machinery and equipment, but owing to poor market conditions in the textile industry it made no change and does not contemplate making a change in location until conditions in that industry improve. When a change is made a great part of the equipment will have to be abandoned. During the taxable years 1919, 1920, and 1921 the taxpayer's plant operated at full capacity.

### OPINION.

TRAMMELL: There is no serious dispute between the taxpayer and the Commissioner with respect to the rate of depreciation based upon wear, tear and exhaustion of assets, or the cost or March 1, 1913, value of assets upon which the deduction is based. While the machines do heavy work and are subject to much vibration, the wearing parts are constantly replaced, such replacements being charged to repair and serving to keep the machines in good condition. The

increased rate claimed by the taxpayer is based principally upon obsolescence. The taxpayer contends that experimentation in improved machinery for manufacturing card clothing has progressed to such a degree that in the near future there is a likelihood that the present machinery will become out of date and need to be replaced before the expiration of its life. There is no evidence, however, that the art had progressed to such an extent during the years involved in this appeal that the taxpayer could foretell that it would have to abandon its machinery and install the new and more modern machinery before the expiration of its useful life. The evidence relates more to what was known or discovered after the taxable years involved.

The deduction allowable for obsolescence is not to be based upon an expectation that progress in the art would be made in the future to such an extent that assets in use could not be profitably used in the future notwithstanding the workable condition, but is to be based on knowledge of conditions and the progress actually being made during the years when the deduction is claimed, which would lead to the conclusion that on account of such progress the assets are actually becoming obsolete. The state of becoming obsolete must be proven. What occurred after the taxable years is not sufficient to prove conditions existing during those years. There is no evidence that during the taxable years it was known that the machinery was in the process of becoming obsolete. As an illustration of the indefiniteness and uncertainty of the knowledge at that time, one of the principal witnesses for the taxpayer, when asked about conditions known in 1919, 1920 and 1922, said " I did not hear much talk then but I knew what they were working on, but whether they had gotten them—they don't tell us what they are doing  *  *  *."

In view of the lack of evidence to sustain the taxpayer's contention with respect to obsolescence, we must hold that it is not entitled to such a deduction. The evidence that the taxpayer was entitled to a greater deduction on account of exhaustion, wear and tear than that allowed by the Commissioner is very meager and insufficient. It was not seriously contended that a greater deduction was allowable unless it was on account of obsolescence.

With respect to the deduction claimed on account of the prospective abandonment of certain assets on account of moving to new quarters due to the expiration of the lease, we find no evidence in the record which would warrant it. The taxpayer had a two-year lease, but the lease provided that the lessee could remain in the possession of the property on the terms provided in the lease, if neither party gave notice to the other that it would not continue. No such notice was given, the taxpayer has remained as lessee under the terms

of the lease, and there is no evidence as to when it is expected to give up the premises. The mere probability that within a few years the premises will be given up, which will necessitate abandoning certain assets, is not sufficient to entitle the taxpayer to an obsolescence deduction with respect to such assets. It does not appear that any plans for giving up the possession of the property had been formulated or contemplated in the years involved.

For the foregoing reasons we must sustain the action of the Commissioner.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*